Good morning, Your Honor. Steve Hubachek, Federal Defenders, on behalf of Mr. McGee. Your Honor, the sentence here was driven by the district court's finding that Mr. McGee was guilty of murder, not manslaughter. A finding that required multiple levels of credibility determination that could not be legitimately made on this paper record. And I think that the briefs... What about the argument that that's not correct because what the district judge was expressing skepticism about was the so-called imperfect self-defense. And that's not the only element of voluntary manslaughter. I mean, there are other grounds, other elements possible that fit into this case. For example, this was a fight, you know, passion. Everybody was drunk. District judge didn't indicate any disagreement with any of those facts, so that was all true. It was just that one aspect of the case that he had skepticism about, that this was really some sort of self-defense claim. I agree that there are multiple ways that you can get from murder down to voluntary manslaughter. And that self-defense is one of those ways. But when the district court judge repeatedly, on I think page 34 and 37 of the record, finds that this is murder, not manslaughter, then he is finding that none of those ways that you get from the murder down to manslaughter apply in this case. And that's inconsistent with the guilty plea that he took. I mean, this was a guilty plea to voluntary manslaughter, which is unlawful killing of a human being without malice. By saying that this really is murder, he's finding that it's with malice, which is... Well, where did he say this is really murder? I mean, he certainly expressed considerable skepticism that there was any, that the defendant thought that there was a knife involved in the victim, with the victim. Right, Your Honor. I think on pages 34 and 37 of the excerpt of the record, he, on both of those instances, I think on three separate occasions, addresses trial counsel for Mr. McGee and says, why isn't this murder? Why isn't this murder? He clearly thinks that it is murder. The only theory offered by the defense for why it wouldn't be murdered at the hearing was this self-defense type theory based upon Mr. McGee's fear because of the sort of combat situation that was evolving. And in order for the district court really to get to the bottom of that, he would have to evaluate the truth or falsity of all of the individual's claims. Because the guy that was outside of the car with Mr. McGee says that the individual in the back seat, Lance Corporal Gaines, was being violent, was saying that he wanted to get out and fight, that he was the only one in the car that appeared as though he was going to fight. There's no credibility determination as to whether or not Mr. Lipsy was telling the truth about that or not. The other individuals in the car say they don't see movements, or actually they didn't say they didn't see movements. They didn't say anything about it at all. A judge would have to evaluate the credibility of those individuals. A judge would have to evaluate the credibility of Mr. McGee's claim that he thought that Gaines was reaching for some sort of weapon. None of those credibility evaluations are possible on this record. And we have a guilty plea with a plea agreement that the district court accepted. He wasn't down by that 48 months, though, was he? You're absolutely right, Your Honor. He wasn't. He stayed within the guidelines, didn't he? He was within the guidelines. He wasn't down by the 48 months. Right. I mean, the guidelines were for manslaughter. I understand. I'm not claiming that he can't give a sentence. Why wasn't it – when I – you know, I read the whole transcript because it concerned me here. But I got the feeling – what the feeling I had after reading the transcript from beginning to end was that the district court judges thought this was more serious – And all he was doing was taking account of the situation. He didn't really make any critical factual findings in order to apply an enhancement or a particular guideline level or whatnot. He just looked at the total situation, and he drew some conclusions about what he thought was the best sentence. He gave him a high-end sentence. I agree that he perceived the case as more serious than the plea agreement reflected. I think you're right about that. I don't think he legitimately perceived that because in order to come to that conclusion, he would have to, as he – Why not? He read – he had all the information. He had the probation officer's report. You know, he – the plea agreement, the arguments and whatnot that had been advanced to him. And he sized it all up, and he just thought that this was more serious than what the plea agreement reflected. And he wasn't – and he had the authority not to go along with the plea agreement, the specific recommended sentence. He accepted the plea agreement. Right. He accepted the plea agreement. He just wasn't going to follow the recommended sentence. I understand. And I failed to see why – where he erred in doing that. I think it's in the sizing up, Your Honor. The only way that he gets to perceiving this as more serious than the party's agreement reflected is by finding that it's something worse than voluntary manslaughter. And that's what he keeps saying over and over again. And in order to reach that judgment, he makes credibility determinations on what each of the individuals said without hearing any of them testify. And it's not just me that thinks that this record doesn't lend itself to credibility determinations. He's saying, look, this was a really serious event. And really what it looks like to me, it looks like it might have been really just murder. I'm sorry. I didn't get the answer. He's sizing up this factual situation. And he said this – and I think he's reflecting that this is just far more serious than the plea agreement – the recommended sentence recognizes. And he makes comments, well, this – you know, this – why isn't – why wasn't this just murder? Right. And he makes a comment, a specific credibility finding that Mr. McGee isn't telling the truth. That's at page 62. I frankly don't find credible the evidence. Well, he didn't hear the evidence. He didn't hear anybody testify. Well, why isn't it reasonable to have some skepticism for the defendant's position that he really was in fear of his life, that he thought that the victim had a knife when the defendant ran away and, you know, never said anything about this for all these years? Would it – is it reasonable at least to have some skepticism for that story? Even though, I mean, only the defendant knows for sure. And why isn't that a sort of human reasonableness? Of course you're right about that, Your Honor. It is reasonable to have skepticism about that story. And I wouldn't argue otherwise. It would be kind of crazy. But the point is, is that to get from skepticism to resolving what happened here, you need to make credibility judgments. And the judge couldn't do that on this record because none of these people testified. So you can't – He didn't have to make any particular factual findings in order to stay within the guidelines, did he? Well, this isn't necessarily – it isn't just a guideline sentence. Did he have to make any particular factual findings to stay within the guidelines? In order to calculate the guidelines, no. The parties agreed on the guidelines and the sentence that he imposes within the guidelines. But this is a Booker 3553. We're not talking about, you know, a drug quantity where he had to make a specific finding of fact in order to apply a particular sentencing range. That's correct. Or even statutory range. Right. But the judge is required to assess the seriousness of the case in order to apply the parsimony provision in 3553A. In order to do that, he has to evaluate for himself what happened. In order to do that, he has to make these credibility determinations, which cannot be made on this record, and which, in fact, the probation officer told him in the report at page 24. There's no way to resolve these disputes. Mr. Richardson has a question. Why did he have to make – he went through all that. I mean, he's got the facts before him. He's an experienced district judge, and he's got a good reputation as being a good, solid district judge. And he looks at it, and he says, well, what do we have here? Stabbed in the back with a knife. Runs away. Twenty years go by. Twenty years go by, and somebody fesses up. And during those 20 years, time runs, statute of limitations runs, and he comes up, and he's within the guidelines, and he imposes a sentence of 71 months. Now, that's not a very heavy sentence for someone who stabs someone in the back and runs away and lies low for over 20 years and commits, you know, a rather egregious crime. Well, I don't understand. This thing was in the guidelines, and you've got to look at the undisputed facts. So I don't see any problem with it. Judge Moskowitz's reputation is well-deserved, but that even a great judge like that can't make credibility determinations based on pieces of paper. That's what he did. That's what drove the sentence, and that's why it's flawed. Well, he can't just look at the facts of what occurred here and decide what the punishment is? I don't think, Your Honor, that he can look at the facts when the facts turn on credibility determinations, which he made without hearing any evidence. Okay. Any other questions, Judge Ferguson? He did plead guilty, didn't he? Yes, Your Honor. He pled guilty to voluntary manslaughter, and the district court spent most of the hearing saying that it really was murder. And that's the point, is that that's not what he pled guilty to. And in order to get from voluntary... And the sentence was within the guideline range for the manslaughter charge. For manslaughter. Yes, yes, it was. So I think he's saying, well, this bothers me, etc., etc., and then he imposes a sentence within the guideline range. So how can he fault him? I mean, that's part of his job. I'm only faulting him because he made credibility determinations based on witnesses that didn't testify, and that's how he came to his perception of how serious the case was. Unless, Your Honors, I have more questions. How about when you've got someone that lies low for 20 years, and he's caught because another person whose conscience was bothering them came forth and with someone who was there at the time, came forth and said what happened? I understand that, Your Honor. Those certainly could be factored into a credibility determination, but there wasn't one made here because there was no testimony. Thank you, Your Honors. I'll give you a minute for rebuttal, Mr. Hubachek. Thank you, Your Honor. We'll hear from the government. Thank you, Your Honor. Good morning. May it please the Court, Tara McGrath for the United States. This was an exemplary sentencing proceeding. The district court was meticulous, thoughtful, and thorough. The characterization of this proceeding and the substance in this sentence as anything less than reasonable and just is simply inaccurate. The district court in this case began with the question. First of all, the district court in this case began with what it referred to as pre-sentencing proceedings. And then the very first thing the district court judged when he began to think about what sentence to impose, he referenced the guidelines. Then, in response to a 48-month joint recommendation by the parties in a case where a United States Marine was murdered by, excuse me, in a case where a United States Marine was stabbed and killed by another United States Marine, the district judge said to the parties, why isn't this murder? Why are you proposing 48 months? And the parties responded with lengthy arguments about why 48 months was an appropriate sentence. And repeatedly, as counsel noted for the court, the district court judge said to the parties, why isn't this murder? He asked a question. He never made a finding that this was murder. He asked a question. He raised a concern. The district court in this case did exactly what he was charged with doing. He voiced concern to the parties, and then he requested that the parties respond, and he gave ample time for that response. This was a two-hour sentencing proceeding in which the parties discussed voluntary manslaughter, addressed the court's concerns about a joint recommendation, and then the court sentenced the defendant within the guideline range of a voluntary manslaughter plea. The credibility point that was brought up by counsel about Mr. McGee, I want to make one response on that, and that is that the district court had ample opportunity to evaluate the defendant's credibility. He engaged in a colloquy with the defendant at his guilty plea, and then again at the sentencing proceeding. He made his evaluation of the credibility of the appellant's statement that he believed that Lance Corporal Christopher Gaines was reaching for a gun. The district court made his determination of the credibility of that statement based on the pre-sentence report, based on the information that was contained in the factual basis of the plea agreement, and based on his conversations with Melvin McGee. The district court had testimony before him of his inquiry and exchanges with Melvin McGee to make a determination of Melvin McGee's credibility. This was an exemplary sentencing proceeding. The district court did exactly, precisely what he was charged with doing. And unless the court has any additional questions, I'll submit on our brief. Thank you. Mr. Abachek, anything further? You've got a minute. Thank you very much, Your Honor. I understand that this is a sentence within the guidelines, but post-Booker you can appeal a sentence within the guidelines if there's some flaw in it. And our point is that it's procedurally flawed, because the district court did find that this was a murder conviction. There was no testimony from which he could make that finding. The parties had agreed to the 48 months, but they also agreed to an agreement where the first-degree murder charge was dismissed and the voluntary manslaughter charge was filed. If the district court had a problem with that, he could have rejected the plea agreement. But he said at the first hearing, he didn't even defer waiting for a pre-sentence report, which he's allowed to do under the rules. He didn't defer. He said, I accept the agreement. So to accept the agreement and then turn around and then say at the sentencing hearing that this is really murder, that suggests that a factual determination has been made. He wasn't accepting the 48 months, though, was he? He didn't have to accept the 48 months, Your Honor. My point is not that the number is somehow inherently flawed, but that the route to get there is procedurally flawed because it's based upon these credibility determinations without testimony. Thank you, Your Honor. Okay, thank you. For all of us. Okay, thank you. Thank you. We appreciate your arguments. Interesting case. The matter is submitted. The next case that appears on the calendar is Davila v. Holder, but that's been submitted on the briefs. And our next case for oral argument is Range Road Music, Inc. v. East Coast Foods.
judges: Jones, Pregerson, Paez